# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**KEIFLAN BROCK KELLEY,**

    **Plaintiff,**

    v.

**TRAVIS WRIGHT, et al.,**

    **Defendants.**

Case No. 2:19-CV-02278-JAR-JPO

## MEMORANDUM AND ORDER

Plaintiff Keiflan Brock Kelley filed this *pro se* action against Defendants Travis Wright, Sheriff Jack Laurie, the Atchison County Jail, and Atchison County, Kansas, alleging violations of his constitutional rights based on events that occurred while he was detained at the Atchison County Jail. Plaintiff seeks damages for the use of excessive force, police brutality, harassment, pain and suffering, mental anguish, and emotional depression and stress.[1] This matter is now before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 7). For the reasons set forth below, Defendants' motion is granted.

## I. Legal Standard

The Court reviews a motion brought pursuant to Fed. R. Civ. P. 12(c) under the same standard that governs Rule 12(b)(6) motions.[2] To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations that, assumed to be true, "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that

---

[1] Doc. 1-1 at 3.

[2] *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (citing *Ramirez v. Dep't of Corrs., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000), *abrogated on other grounds by Crawford-El v. Britton*, 523 U.S. 574 (1998), *as recognized by Currier v. Doran*, 242 F.3d 905, 912, 916 (10th Cir. 2001)); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992) (citing *McHenry v. Utah Valley Hosp.*, 927 F.2d 1125, 1126 (10th Cir. 1991)).

is plausible on its face."[3]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[5]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

      The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the Court "must take all of the factual allegations in the complaint as true," but is "not bound to accept as true a legal conclusion couched as a factual allegation."[8]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[3]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[4]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8]*Id.* (quoting *Twombly*, 550 U.S. at 555).

[9]*Id.* at 679.

[10]*Id.*

misconduct alleged."[11]  A motion for judgment on the pleadings should not be granted unless the movant has established that there are no material facts to be resolved and that the movant is entitled to judgment as a matter of law.[12]

Because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis.  The Court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which applies to attorneys.[13]  "Nevertheless, [Plaintiff] bears 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"[14]  The Court may not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[15]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[16]

## II. Factual Background

The Court derives the following facts from Plaintiff's Complaint and construes them in the light most favorable to Plaintiff.  Plaintiff was in custody at the Atchison County Jail in February 2019.  On or around February 21, 2019, the jail granted Plaintiff's request meet with Defendant Travis Wright.[17]  During the meeting, which took place at the jail's intake area,

---

[11]*Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[12]*Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (citing *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

[13]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (citation omitted).

[14]*Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[15]*Whitney*, 113 F.3d at 1173–74 (citing *Hall*, 935 F.2d at 1110).

[16]*Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[17]Throughout his Complaint, Plaintiff makes allegations about the actions of "the defendant" without specifying the individual Defendant or Defendants to which he refers.  However, the Court can reasonably infer that Plaintiff's allegations refer to Defendant Wright.  Plaintiff alleges that on February 21, 2019, "plaintiff was granted his request to talk and meet with the defendant."  Doc. 1-1 at 1.  Defendants' Answer admits that on February 21, 2019, Plaintiff "requested to meet with Defendant Travis Wright" and "did meet with Defendant Travis Wright."

Wright became hostile and argued with Plaintiff. Wright approached Plaintiff in an aggressive manner and commanded him to return to his pod. Plaintiff complied, and Wright followed behind shouting at Plaintiff. Plaintiff told Wright that he was making him uncomfortable, and the two exchanged unpleasant words. Upon reaching the pod's sliding door, Wright uncuffed Plaintiff's hands and told him to go to lockdown. Plaintiff complied and started walking upstairs, with Wright continuing behind him. Wright then began touching and grabbing Plaintiff's arm, despite Plaintiff's compliance with his order.

At Plaintiff's cell door, Wright twisted Plaintiff's arm and wrist multiple times, handcuffed him, and then twisted his arm and wrist again. Wright kept Plaintiff's arm twisted, then lifted Plaintiff's arms in the air while the two walked back down the stairs. Wright took Plaintiff to the intake holding cell, where he remained overnight. Wright removed the mattress and toilet paper from the holding cell, leaving Plaintiff to sleep on the bunk with no blanket for twelve hours. This confinement also resulted in Plaintiff missing his "hour out that day," dinner, and laundry service.[18]

Throughout these interactions, Wright verbally harassed and intimidated Plaintiff, including through the use of racist slurs and threatening to violently attack Plaintiff. After his interactions with Wright, Plaintiff requested medical attention for "extremely sore" shoulders, wrist, and neck, but was denied medical care until the following morning.[19] He also alleges that Wright's actions caused him to experience numbness and loss of mobility in one hand.

---

Doc 4. at 2. It logically follows that Plaintiff's additional factual allegations, regarding events immediately after those admitted by Defendants, also refer to Wright.

[18]Doc. 1-1 at 3.

[19]*Id*.

**III.    Discussion**

    **A.    Failure to Respond**

As an initial matter, Plaintiff has failed to respond to Defendants' motion for judgment on the pleadings, and the Court may grant Defendants' motion on that basis alone. Under D. Kan. Rule 7.4(b),

> [a]bsent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.

Defendants filed their motion on September 11, 2019 and served Plaintiff on that date by U.S. Mail at two addresses, one of which was his address of record with the Court. However, on September 19, 2019, Defendants filed an additional "Notice of Service" indicating that they had also served Plaintiff with the motion by email and at a new street address, which was previously unknown to the Court.[20] Calculating twenty-one days from this second service attempt, Plaintiff's response to Defendants' motion for judgment on the pleadings was due on October 10, 2019.

When Plaintiff failed to respond, the Court issued an Order to Show Cause directing Plaintiff to show cause in writing, on or before November 7, 2019, why Defendants' motion for judgment on the pleadings should not be granted as unopposed.[21] The Court also ordered Plaintiff to file a response to Defendants' motion by the same date. The Court warned Plaintiff that if he failed to respond to the show-cause order, or to file a response to Defendants' motion

---

[20]Doc. 11. Defendants' Notice of Service did not provide Plaintiff's email address, and Plaintiff is not a registered ECF participant.

[21]Doc. 14.

for judgment on the pleadings as directed, the Court would consider Defendants' motion as unopposed as described in D. Kan. Rule 7.4(b). The Clerk of the Court sent a copy of the show-cause order to Plaintiff at the updated address provided by Defendants by both regular and certified mail. The Court has since received a certified mail receipt signed by Plaintiff showing that Plaintiff received the order at this address.[22]

To date, Plaintiff has filed no response to either the Court's show-cause order or Defendants' motion for judgment on the pleadings. Accordingly, the Court may grant Defendants' motion as uncontested. Out of an abundance of caution, the Court considers the substance of the motion below.

**B.    Plaintiff's Claims**

Defendants state, and the Court agrees, that Plaintiff appears to invoke 42 U.S.C. § 1983 as the basis for his claims arising under the Constitution. Section 1983 provides a cause of action for the deprivation of federal rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ."[23] The statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[24]

As discussed further below, it appears that Plaintiff alleges the violation of his rights under the Fourteenth Amendment regarding the use of excessive force and failure to provide medical care. Plaintiff's Complaint might also be construed to allege that the conditions of his pretrial confinement subjected him to punishment and/or inhumane conditions in violation of the Fourteenth Amendment. Defendants argue that Plaintiff's claims fail for multiple reasons,

---

[22]Doc. 16.

[23]42 U.S.C. § 1983.

[24]*Albright v. Oliver*, 510 U.S. 266, 270 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

6

including that Plaintiff has named improper defendants, that Plaintiff has failed to allege facts sufficient to state a claim, and that Defendants are entitled to immunity from suit. The Court addresses each Defendant in turn.

### 1. Defendant Atchison County Jail

Plaintiff's claims against the Atchison County Jail must be dismissed because the jail is not an agency amenable to suit. Under Fed. R. Civ. P. 17(b), the capacity of a party to be sued in federal court is to be determined by the law of the state where the court is located.[25] Kansas courts have held that "[s]ubordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued."[26] Here, there is no authority granting the Atchison County Jail the capacity to sue or be sued and, under Kansas law, courts have found that county jails lack such capacity.[27] Thus, the Court must dismiss Plaintiff's claims against the Atchison County Jail.

### 2. Defendant Atchison County

Based on the heading of Plaintiff's handwritten Complaint, Plaintiff likely did not intend to name Atchison County as a defendant. Instead, it appears Plaintiff merely wrote "Atchison County, KS" to provide the geographical location of the other three Defendants.[28] This is supported by Plaintiff's second heading, which reads, "Petition filing A Civil Lawsuit Against

---

[25] Fed. R. Civ. P. 17(b).

[26] *Mashaney v. Bd. of Indigents' Def. Serv.*, 355 P.3d 667, 672 (Kan. 2015) (quoting *Lindenman v. Umscheid*, 875 P.2d 964, 977 (Kan. 1994)).

[27] *See, e.g., Caranchini v. Hayden*, Case No. 19-2067-CM-JPO, 2019 WL 2567734, at *2 (D. Kan. June 21, 2019) ("Kansas county jails are not legal entities that can be sued.") (citing *Gray v. Kufahl*, No. 15-9203-CM, 2016 WL 4613394, at *3 (D. Kan. Sept. 6, 2016))); *Pittman v. Kurtz*, 165 F. Supp. 2d 1243, 1247 (D. Kan. 2001) ("[T]here are no statutes which state that the Sedgwick County Jail has the capacity to sue or be sued. The jail, therefore, cannot be sued for the alleged unconstitutional acts of its officials.").

[28] Doc. 1-1 at 1.

Travis Wright (A.C.J.) (Sheriff Jack Laurie)."[29]  Atchison County is not mentioned in this second heading or anywhere else in Plaintiff's Complaint.  If Plaintiff did intend to include Atchison County, he has improperly named this defendant.  Under Kansas law, "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____.'"[30]  Plaintiff's Complaint failed to follow this format and, in any event, amendment to substitute the proper defendant would be futile.

Though a county may be liable for acts of its employees under § 1983, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" under a theory of *respondeat superior*.[31]  Instead, to hold a county liable under § 1983 for acts of its employees, a plaintiff must establish that the municipality has a policy or custom that directly caused the deprivation of rights.[32]  As discussed in greater detail below in the context of any official-capacity claim against Defendant Sheriff Laurie, Plaintiff fails to allege any facts indicating that a County policy or custom caused a violation of his constitutional rights and his claims against the County must therefore be dismissed.

---

[29]*Id.*

[30]K.S.A. § 19-105; *see Brown v. Sedgwick Cty. Sheriff's Office*, 513 F. App'x 706, 707 (10th Cir. 2013) ("Brown's claim against the Sedgwick County Sheriff's Office is directed against the wrong defendant, as the Board of County Commissioners of Sedgwick County is the appropriate defendant for claims against any of its subunits.") (citations omitted)); *Strutz v. Wellpath Healthcare*, Case No. 19-3098-SAC, 2019 WL 4241126, at *2 (D. Kan. Sept. 6, 2019) ("K.S.A. § 19-105 . . . provides that all suits by or against a county shall be brought by or against the board of county commissioners.").

[31]*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Brown*, 513 F. App'x at 708.

[32]*Monell*, 436 U.S. at 694; *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).

### 3. Defendant Sheriff Jack Laurie

Sheriff Laurie's name appears twice in the heading of Plaintiff's Complaint.[33] Throughout the remainder of the Complaint, Plaintiff makes no allegation that Laurie took any action or had any direct involvement in the incident on February 21, 2019 at the Atchison County Jail. Further, Plaintiff does not specify whether he is suing Laurie in his official or individual capacity.

To the extent that Plaintiff brings claims against Laurie in his official capacity, Defendants assert that he is entitled to Eleventh Amendment immunity from suit. The Eleventh Amendment bars a claim for money damages against a state defendant in his official capacity.[34] However, the Court must consider whether Laurie acted as an officer of Atchison County rather than the State of Kansas. This determination requires the application of a "four-factor inquiry, taking into account (1) how the entity is characterized under state law; (2) the entity's degree of autonomy; (3) the sources of the entity's operating funds; and (4) whether the entity deals primarily with local or state concerns."[35] "[T]he question is not whether the sheriff acts for the state or the county in some categorical, 'all or nothing' manner, but rather whether the sheriff acted for the state in a particular area, or on a particular issue."[36]

The Court follows the reasoning set forth in *Reyes v. Board of County Commissioners of Sedgwick County, Kansas* and finds that for the purposes of this case, in which Plaintiff alleges

---

[33]Doc. 1-1 at 1.

[34]*White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (citing *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995)).

[35]*Reyes v. Bd. of Cty. Comm'rs of Sedgwick Cty., Kan.*, No. 07-CV-2193-KHV, 2008 WL 2704160, at *7 (D. Kan. July 3, 2008) (*citing Steadfast Ins. Co. v. Agric. Ins. Co*., 507 F.3d 1250, 1252–53 (10th Cir. 2007)), *aff'd sub nom. Reyes v. Bd. of Cty. Comm'rs of Cty. of Arapahoe, Colo*., 311 F. App'x 113 (10th Cir. 2009), *cert. denied*, 558 U.S. 875 (2009).

[36]*Id*. (citing *McMillan v. Monroe Cty., Ala*., 520 U.S. 781, 785 (1997)).

unconstitutional conduct in a county jail, Laurie would have acted as an arm of Atchison County rather than the State of Kansas.[37] Thus, any official-capacity claim against him is the equivalent of an action against the Atchison County Board of County Commissioners.[38] While the County is not entitled to Eleventh Amendment immunity,[39] Plaintiff's claims against it must be dismissed nonetheless because Plaintiff has failed to allege that Atchison County has a policy or custom that directly caused the deprivation of his rights under the Constitution.

The Tenth Circuit has articulated the following bases for municipal liability under § 1983:

> Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" Municipal liability may [ ] also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.[40]

---

[37]*Id.* (determining that *Hunter v. Young,* 238 F. App'x 336, 338 (10th Cir. 2007) was not binding because it contained no analysis of this issue; and applying the four-factor test from *Steadfast Ins. Co.*, 507 F.3d at 1252–53, in finding that "for purposes of setting policy for identifying and detaining prisoners on warrants from Sedgwick County, the sheriff acts as an arm of the county, and not the State"); *see also Estate of Holmes v. Somers*, 387 F. Supp. 3d 1233, 1257–61 (D. Kan. 2019) (holding that "with respect to local law enforcement activities, sheriffs are not arms of the state but rather of the county that they serve").

[38]*Reyes*, 2008 WL 2704160, at *7 (citation omitted).

[39]*See Steadfast Ins. Co.*, 507 F.3d at 1253 ("In terms of scope, Eleventh Amendment immunity extends to states and state entities but not to counties, municipalities, or other local government entities.") (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)).

[40]*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (citations omitted).

To give rise to municipal liability, an informal practice or custom must be "so widespread as to have the force of law."[41] Further, the Tenth Circuit has held that the practice or custom must be "closely related to the violation of the plaintiff's federally protected right."[42]

Plaintiff has not alleged facts sufficient to bring a County policy, regulation, or well-settled custom into play here. Although Plaintiff's Complaint includes in parentheses the phrases "lack of proper training" (after his count for "police brutality") and "not protecting inmate" (after his count for "excessive force"),[43] the Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a . . . 'policy or custom' that is actionable under § 1983."[44] "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[45] Similarly, a failure to protect or supervise claim would require a showing of "deliberate indifference to inmate health or safety."[46] Plaintiff's conclusory use of the phrases "lack of proper training" and "not protecting inmate," without supporting factual content, is insufficient to state a claim.

---

[41]*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell v. Dep't Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978)); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted).

[42]*Schneider*, 717 F.3d at 770.

[43]Doc. 1-1 at 3.

[44]*City of Canton, Ohio v. Harris,* 489 U.S. 378, 389 (1989); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

[45]*Waller v. City and Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Barney*, 143 F.3d at 1307); *see also Brown*, 520 U.S. at 407.

[46]*Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Brammer-Hoelter v. Twin Peaks Charter Acad*., 602 F.3d 1175, 1189 (10th Cir. 2010).

Turning to Plaintiff's individual-capacity claims against Laurie, if any, "a defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability."[47] Again, there appears to be no allegation here of Laurie's personal participation in the events underlying this action. As to supervisory liability, in order to impose liability under § 1983 on a defendant-supervisor not directly involved in an incident, the plaintiff must "plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."[48] For example, "[a] defendant supervisor's promulgation, creation, implementation, or utilization of a policy that caused a deprivation of [the] plaintiff's rights could . . . constitute[] sufficient personal involvement."[49] Alternatively, a defendant supervisor may be liable if he fails to supervise subordinates, thereby resulting in constitutional harm to the plaintiff.[50]

Plaintiff has simply failed to allege facts sufficient to state a claim against Laurie. Plaintiff's Complaint does not specify which claims are asserted against Laurie or allege facts establishing Laurie's personal involvement in or responsibility for the conduct at issue. Again, the Court may not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf,"[51] and any claim against Laurie in either his

---

[47]*Sigg v. Allen Cty., Kan.*, Case Nos. 15-CV-01007-EFM, 15-CV-01012-EFM, 2016 WL 6716085, at *6 (D. Kan. Nov. 15, 2016) (citing *Bruner-McMahon v. Hinshaw*, 846 F. Supp. 2d 1177, 1198–99 (D. Kan. 2012)).

[48]*Id.* at *8 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010)); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) ("[T]he three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities [are]: (1) personal involvement; (2) causation; and (3) state of mind."); *Trujillo v. Williams*, 465 F.3d 1210, 1227–28 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.") (citations omitted)).

[49]*Sigg*, 2016 WL 6716085, at *8 (quoting *Dodds*, 614 F.3d at 1195); *see also Burke v. Regaldo*, 935 F.3d 960, 997 (10th Cir. 2019).

[50]*Sigg*, 2016 WL 2016 WL 6716085, at *8 (citing *Dodds*, 614 F.3d at 1195).

[51]*Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

official or individual capacity must therefore be dismissed. Further, as set forth below, any official-capacity or individual supervisory-liability claim against Laurie also fails because Plaintiff has failed to sufficiently allege facts establishing that Wright—the only Defendant whose personal conduct is described in the Complaint—committed a constitutional harm.[52]

### 4. Defendant Travis Wright

Wright asserts the defense of qualified immunity to Plaintiff's claims against him.[53] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[54] To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff pleads sufficient facts showing that the official violated a federal statutory or constitutional right, and that the right the official violated was "clearly established" at the time of the challenged conduct.[55] Generally, for a right to be considered clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[56] The Supreme Court "has held that qualified

---

[52]*See, e.g., Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019) ("Supervisors cannot be liable under § 1983 where there is no underlying violation of a constitutional right by a supervisee.") (citing *Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009))); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) ("[A] municipality cannot be liable under § 1983 if the officer in fact inflicted no constitutional harm) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782–83 (10th Cir. 1993) (stating that a finding of qualified immunity based on conclusion that officer's conduct did not violate the law preludes imposition of municipal liability).

[53]Defendants also raise qualified immunity as a defense to Plaintiff's claims against Laurie. As discussed above, Plaintiff fails to provide sufficient factual support to state an individual-capacity claim against Laurie based on either his personal involvement in the events of February 21, 2019 or his supervisory role. To the extent that Plaintiff does allege involvement by Laurie in the events underlying this suit, the Court's analysis of qualified immunity with respect to Wright also applies to Laurie.

[54]*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[55]*Id.* at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Routt v. Howard*, 764 F. App'x 762, 766–67 (10th Cir. 2019); *Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000).

[56]*Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)).

immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[57] "[I]f a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability."[58] Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.[59]

As with respect with the other Defendants, Plaintiff has not stated precisely which of his constitutional rights he contends Wright violated. The Court's "first task in any § 1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with which [the defendant] is charged.'"[60]

Turning first to Plaintiff's excessive-force claim, a plaintiff can assert such a claim under the Fourth, Fifth, Eighth, or Fourteenth Amendment, but "each carries with it a very different legal test."[61] The standard to be applied depends on precisely where the plaintiff was in the criminal justice system at the time of the challenged conduct.[62] Relevant here, the Fourteenth Amendment "governs any claim of excessive force against a *state* official by a 'pretrial detainee.' In this context, a 'pretrial detainee' is one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of his liberty following arrest.'"[63]

---

[57]*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986))*; see also al-Kidd*, 563 U.S. at 743.

[58]*Ziglar*, 137 S. Ct. at 1867.

[59]*See al-Kidd*, 563 U.S. at 735 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[60]*Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

[61]*Estate of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (quoting *Porro*, 624 F.3d at 1325).

[62]*Id.* at 419.

[63]*Mochama v. Zwetow*, CIVIL ACTION No. 14-2121-KHV, 2017 WL 36363, at *18 n.27 (D. Kan. Jan. 3, 2017) (citing *Booker*, 745 F.3d at 419); *see Booker*, 745 F.3d at 419 (explaining that excessive-force claims involving convicted prisoners arise under the Eighth Amendment; Fourth Amendment excessive-force claims apply to facts leading up to and including arrest; and Fifth or Fourteenth Amendment excessive-force claims address instances that fall "somewhere between the two stools of an initial seizure and post-conviction punishment.").

Given Defendants' statement that Plaintiff was a "pretrial detainee"[64] at the time of the events in question, as well as Plaintiff's allegation that on the day in question, "Plaintiff was granted his request to talk and meet with the defendant . . . as per requested *all week*,"[65] it appears that Plaintiff had been detained for some time but not yet tried, and that his excessive-force claim therefore invokes the Fourteenth Amendment.

To determine whether the use of force is excessive under the Fourteenth Amendment, courts "apply an objective standard, which requires that [the plaintiff] 'show only that the force purposely or knowingly used against him was objectively unreasonable.'"[66] In an opinion issued earlier this year, the Tenth Circuit affirmed the district court's dismissal under Rule 12(b)(6), finding, with respect to the plaintiff's allegation that two detention officers pushed him down a hallway with his arm twisted and held behind his back, that "[i]t is not objectively unreasonable for a jail officer to hold a detainee's arm and push him, even awkwardly, through a jail hallway."[67] As to the plaintiff's additional claim that officers "slung [him] forward into [his] cell [thereby] hurting [his] neck, back, shoulder and throat,"[68] the court found that the plaintiff had failed to cite existing precedent establishing the violation of a clearly established right to overcome a qualified immunity defense.[69]

Plaintiff's allegations in this case are similar, and the Court finds that he has failed to allege the use of objectively unreasonable force. Moreover, even if Plaintiff has alleged

---

[64]Doc. 8 at 5 n.2, 11.

[65]Doc. 1-1 at 1 (emphasis added).

[66]*Routt v. Howard*, 764 F. App'x 762, 766 (10th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

[67]*Id*. at 766.

[68]*Id*. at 765.

[69]*Id*. at 767.

objectively unreasonable force, he failed to respond to Defendants' motion and therefore has not met his burden of establishing that the right in question was clearly established at the time of the incident at the Atchison County Jail. Consequently, Wright is entitled to qualified immunity from Plaintiff's excessive-force claim.

Turning next to Plaintiff's claim for the denial of medical care, although "[a] prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment,"[70] pretrial detainees such as Plaintiff "cannot invoke the Eighth Amendment, which applies only to those convicted of a crime."[71] However, "[u]nder the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment."[72] In either type of case, claims of "inadequate medical attention . . . must be judged against the 'deliberate indifference to serious medical needs' test of *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, L.Ed.2d 251 (1976)."[73]

"'Deliberate indifference' involves both an objective and a subjective component. The objective component is met if the deprivation is 'sufficiently serious.'"[74] "A medical need is

---

[70] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).

[71] *Smith v. Harvey Cty. Jail*, 889 F. Supp. 426, 430 (D. Kan. 1995) (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992)).

[72] *Frohmader*, 958 F.2d at 1028 (citing *Martin v. Bd. of Cty. Comm'rs of Cty. of Pueblo, Colo.*, 909 F.2d 402, 406 (10th Cir. 1990)); *see also Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019); *Myers v. Okla. Cty. Bd. of Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998).

[73] *Frohmader*, 958 F.2d at 1028 (citing *Martin*, 909 F.2d at 406); *see also Lopez v. LeMaster*, 172 F.3d 756, 759 n.2, 764 (10th Cir. 1999).

[74] *Sealock*, 218 F.3d at 1209 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Burke*, 935 F.3d at 992. In *Kingsley v. Hendrickson*, "the Supreme Court held that the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants act 'maliciously and sadistically to cause harm,' does not apply to Fourteenth Amendment excessive force claims brought by pretrial detainees." *Estate of Vallina v. Cty. of Teller Sheriff's Office*, 757 F. App'x 643, 646 (2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015)); *see also Burke*, 935 F.3d at 991 n.9. The "[c]ircuits are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees," with the Tenth Circuit not yet having decided the issue. *Vallina*, 757 F. App'x at 646–47 (noting that the Second, Seventh,

sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[75] "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"[76] A delay in providing medical care does not amount to a violation of the detainee's rights "unless the delay caused substantial harm by further injuring the inmate."[77] "Substantial harm is a 'lifelong handicap, permanent loss, or considerable pain.'"[78]

On the facts alleged, Plaintiff fails to state a cognizable claim for deliberate indifference to his medical needs. Plaintiff filed his Complaint about two weeks after the events in question. Although he alleges that his shoulders, neck, and wrist remained extremely sore at that time, and that his hand went cold, numb, and had limited mobility, he also states that he received medical care the morning after his encounter with Wright and does not allege substantial harm resulting from the brief delay in treatment. The Court cannot find that Plaintiff's medical need was sufficiently obvious that a lay person would have recognized the need for immediate treatment or that Wright disregarded an excessive risk to Plaintiff's health or safety. Moreover, Plaintiff has failed to respond to Defendants' motion raising qualified immunity as a defense, and therefore

---

and Ninth Circuits have found *Kingsley* displaces the prior subjective inquiry for conditions of confinement and inadequate medical care claims, while the Fifth, Eighth, and Eleventh Circuits have held that *Kingsley* applies only to excessive force claims). Even if an objective inquiry applies here, Plaintiff's allegations are insufficient to establish either a subjective disregard of a known risk or an objectively reckless disregard of a serious medical issue. *See id.* at 647.

[75] *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

[76] *Id.* (citing *Farmer*, 511 U.S. at 837).

[77] *Rivera v. Leaming*, No. 99-3067-JWL, 2000 WL 382035, at *7 (D. Kan. Apr. 5, 2000) (citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *Grant v. Bernalillo Cty. Det. Ctr.*, No. 98-2193, 1999 WL 157415 (10th Cir. Mar. 23, 1999) (unpublished)); *see also Cullen v. Sheppard*, No. 07-3218-SAC, 2007 WL 2804914, at *1 (D. Kan. Sept. 25, 2007).

[78] *Cullen*, 2007 WL 2804914, at *1 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

has not met his burden of establishing that his right to immediate medical care under these circumstances was clearly established at the time.

Finally, Plaintiff's Complaint might be read to assert that the conditions of his pretrial confinement subjected him to punishment and/or inhumane conditions in violation of the Fourteenth Amendment. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."[79] "A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'"[80] "Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."[81]

The Tenth Circuit has held that explained that:

> [T]he Fourteenth Amendment's guarantee of due process prohibits *any* punishment of those awaiting trial. Punishment may be constitutionally acceptable for persons convicted of crimes—at least so long as it doesn't amount to "cruel and unusual" punishment as defined by *Estelle* and *Hudson*. But punishment is *never* constitutionally permissible for presumptively innocent individuals awaiting trial.[82]

In determining what does and does not amount to punishment, the court must first "ask whether an 'expressed intent to punish on the part of the detention facility officials' exists. If so, liability

---

[79]*Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (citing *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40, 674 (1977); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 165–67, 186 (1963); *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)).

[80]*Id*. at 536 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)).

[81]*Id*. at 536–37.

[82]*Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (citing *Bell*, 441 U.S. at 535; *Youngberg v. Romeo*, 457 U.S. 307, 320–21 (1982)).

may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective."[83]

Similarly, a pretrial detainee is entitled to "humane conditions of confinement [including] the basic necessities of adequate food, clothing, shelter, and medical care . . . and reasonable measures to guarantee [his] safety."[84] To establish an official's liability for violating a pretrial detainee's Fourteenth Amendment right to humane conditions, the plaintiff must show that the official was aware of but disregarded an excessive risk to the plaintiff's health and safety and that the alleged deprivation was "sufficiently serious."[85] However, "[t]ime can play a significant part in a court's analysis of these issues,"[86] and "[t]here is . . . a *de minimus* level of imposition with which the Constitution is not concerned."[87]

Plaintiff alleges that after his interaction with Wright on February 21, 2019, Wright placed him in the intake holding cell where he remained overnight. He alleges that this caused him to miss dinner, laundry service, and his daily "hour out." Plaintiff also alleges that he had no blanket, and that Wright removed the cell's mattress and toilet paper. While the Court has not heard from either side regarding whether any of the deprivations imposed by Wright for a period of roughly twelve hours might have been for a legitimate governmental objective versus punishment, courts have found no Fourteenth Amendment violation in cases involving similar

---

[83]*Id*. (internal citation omitted) (citing *Bell*, 441 U.S. at 538–39).

[84]*Ledbetter v. City of Topeka, Kan*., 318 F.3d 1183, 1188 (10th Cir. 2003) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (final alteration in original)).

[85]*Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

[86]*Fillmore v. Eichkorn*, 891 F. Supp. 1482, 1493 (D. Kan. 1995) (citing *Bell*, 441 U.S. at 543; *Block v. Rutherford*, 468 U.S. 576, 587 (1984); *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978)).

[87]*Id*. (citing *Bell*, 441 U.S. at 539 n.21) (collecting cases).

facts and the Court finds none here.[88]  Moreover, even if the Court were to assume that Plaintiff has sufficiently alleged a violation of his due process rights, he has failed to respond to Defendants' motion raising qualified immunity and therefore has not met his burden of establishing that the rights in question were clearly established at the time.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Judgment on the Pleadings (Doc. 7) is **granted**.  This case is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

Dated: December 9, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[88] *See, e.g., Ledbetter*, 318 F.3d at 1188 (pretrial detainee's contention that he was placed barefoot in a cell without a toilet for five hours does not allege sufficiently serious deprivation to amount to constitutional violation); *Reynolds v. Comanche Bd. of Cty. Comm'rs*, No. 96-6272, 1997 WL 589182, at *1–2 (10th Cir. 1997) (unpublished) (placement in overcrowded cell without mattress, proper toilet facilities, and hygiene items over period of several months did not constitute punishment in violation of detainee's rights); *Waterman v. Cherokee Cty. Jail*, No. 18-3092-SAC, 2018 WL 3609751, at *1–2 (D. Kan. July 27, 2018) ("The short-term denial of hygienic items, including toothpaste, toothbrushes and toilet paper for 72 hours or sometimes longer do not rise to the level of a constitutional violation.") (collecting cases)); *Fillmore*, 891 F. Supp. at 1492–93 (finding no violation where detainee was placed in detoxification cell for several hours without chair, mattress, sink, toilet, blanket, pillow, writing materials, or sufficient amount of toilet paper).